The Long Dock Co. *v.* Mallery.

---

The Long Dock Company *vs.* James H. Mallery and others.

M. entered into a contract with the complainants to construct a tunnel. In the progress of the work, M. had received large sums in payment, and the complainants had retained in their hands, by virtue of a stipulation of the contract to that effect, the sum of about $42,000, being ten per cent. of the estimates, or supposed value of the work. M., in consideration of the payment of this percentage to him, executed a mortgage upon a large amount of property, consisting of buildings and machinery, tools, &c., with a condition that the contract should be fully performed on his part, or the $42,000,

Long Dock Company *v.* Mallery.

with interest, refunded. The two clauses in the contract, which particularly specified the purposes to which the percentage retained was to be applied, were as follows: "If the party of the first part shall refuse or unreasonably neglect to remedy any imperfections which may be pointed out by the engineer, or in any manner violate the conditions of this contract, so that, in the judgment of the engineer, there shall be just grounds of apprehension that the work will not be completed in the manner and within the time herein specified, then it shall be the duty of the engineer to serve a written notice upon said party, setting forth the grounds of his apprehension, and specifying the manner, together with a reasonable time, in which said party may cause such grounds to be removed; and if, at the expiration of such time, said grounds of apprehension be not removed, then full power and authority are mutually vested in such engineer to declare their contract forfeited; and on such declaration being given in writing to the parties hereto this contract shall cease and determine immediately, and the said party of the second part may for ever retain the reserved percentage on account of the consideration for damages which they may have sustained by reason of the forfeiture of this contract, "or, as another alternative, the party of the second part, at their option, may allow the party of the first part an extension of time, in which case the party of the first part hereby agrees to forfeit to the party of the second part the sum of $2500 for each and every month the work shall be delayed beyond the time herein stipulated for the completion of the same, the amount to be deducted from the engineer's estimates or from the reserved percentage."

Shortly after the execution of the mortgage, attachments were taken out against M., as an absent debtor, and levied on the mortgaged property, and judgment being entered, the auditors advertised it for sale.

The complainants then filed their bill for a sale of the property to pay the mortgage money, and that they might have priority over attaching creditors, and that creditors might be enjoined from selling. On motion to dissolve injunction, *held*—

*First*, that the percentage retained under the contract was not for the general indemnity of the complainants, but could only be resorted to for the purposes mentioned in the two clauses thereof above recited.

*Second*, that as the bill, in connection with the affidavits, shows that the engineer had not declared the contract forfeited, and that the complainants had not given the extension according to the terms of the contract, the bill could not be maintained, and the injunction must fall.

A mortgage of personal property may be enforced, if the mortgagee has possession of the property, by a sale by him in *market overt*, or he may sell it under a decree of this court. It is his right to forclose his mortgage; he is not bound to incur the risk of selling the property without the sanction of a decree.

The remedy at law, as between the mortgagee and attaching creditor, would only settle the right of possession, and is therefore inadequate.

The condition of a mortgage may not have been broken—the time may not have arrived when the money is payable—and as between mortgagor and mortgagee, the latter may have no right to enforce his mortgage—and yet there may be circumstances, notwithstanding, which will entitle the mort-

gagor to his bill for the protection of the property, and will justify the court in converting the mortgage property into money for the better protection of the parties in interest.

*A. O. Zabriskie*, for complainants.

*Gilchrist* and *Wakeman*, for defendants.

THE CHANCELLOR. The complainants and the defendant, Mallery, entered into a contract, by which the defendant contracted to construct a tunnel through Bergenhill, for a price to be paid by the complainants in the manner stipulated in the contract. The work was to be completed on or before the seventh of December, A. D. 1857, and payment was to be made from time to time, as the work progressed, on the certificate of the engineer for work done, the engineer to deduct such percentage as he might think proper from the value of the work done, which should in no case be less than ten per cent. In the progress of the work, up to the 28th day of July, 1857, Mallery had received from the complainants about four hundred thousand dollars, and the complainants had retained in their hands about the sum of forty-two thousand dollars, being the ten per cent. of the estimates, or supposed value of the work done.

Mallery, being desirous of obtaining the advance of the forty-two thousand dollars, requested the complainants to pay it to him, and offered to give a mortgage upon a large amount of property, consisting of buildings and machinery, tools, &c., used in and about the construction of the work, with a condition that the contract should be fully performed on his part, or the forty-two thousand dollars, with interest, refunded. The company paid Mallery the money, and he executed and delivered to them the mortgage with the condition, as above stated.

Shortly after the execution of the mortgage, an attachment was taken out against Mallery, as an absent debtor, and the mortgage property was levied upon. The attach-

ment went to judgment, and the auditors advertised the property for sale. The complainants then filed this bill upon their mortgage, praying for a sale of the property to pay the mortgage money, that they might have priority over the attaching creditors, and that the creditors might be enjoined from selling under their attachment. The injunction issued according to the prayer of the bill.

The defendant, Mallery, has answered the bill, and the defendants move a dissolution of the injunction. On their behalf, it is insisted that there is no equity in the bill, and that the answer is full as to any merits the bill may possess.

The object both parties had in view, in reference to the mortgage, was evidently this, and nothing more—to give Mallery the benefit of the money which he had earned, and to substitute for it the mortgage; so that if, eventually under the contract, the company should be legally entitled to retain the whole, or any part of the forty-two thousand dollars, they might raise it, and reimburse themselves through this mortgage. It is quite clear that the company have no right to call upon Mallery for any part of the money, and consequently have no right to enforce the mortgage to raise it, unless, by the terms and conditions of the contract, they have an absolute right to the money on account of some default in the execution of the contract by Mallery which legally entitles them to it. If the complainants retain a lien upon the property by virtue of their mortgage, then the injunction to stay the sale under the attachment was properly granted. A mortgage of personal property may be enforced, if the mortgagee has possession of the property, by a sale by him in *market overt*, or he may sell it under a *decree* of this court. It is right to enforce his mortgage by proceedings in this court; and there are many good reasons why a party holding a mortgage for so large an amount as this should not incur the risk of selling it without a decree of the court. Such a decree will always remain a record for

his protection; it settles all equities between the parties. If he undertakes to enforce the mortgage, and raise the money without such decree, he is liable to be called upon at any time to account for the execution of his trust. Where the property is out of the possession of the mortgagee there seems a necessity for his coming here; otherwise he must first resort to his action at law to recover possession of the property. The counsel in this case insisted that the injunction was wrongfully granted, because the complainants had their remedy at law, and that they ought to have brought *replevin* to try whether the auditors in attachment had a legal right to the possession of the property, as against them. But the remedy at law would have been a very inadequate one. If they had recovered, it would have given them only the *possession* of the property, and not a satisfaction of their mortgage. They still would have been obliged to resort to a court of equity to enforce their mortgage. It was said, a court of law is the proper tribunal to test the validity of the attachment, and the right of possession of the auditors under it. The validity of the attachment, or the rights of the auditors under it, are not disputed. But the complainants say they have an *equitable* lien on that property, which has priority over the *legal* lien of the creditors; and that a court of equity is the proper tribunal in which to enforce their mortgage and to settle the priority of the several liens. The defendants do not dispute the complainants' priority; but insist that, on account of what has taken place between the mortgagor and mortgagee, the mortgage cannot be enforced. If this is so, this is the proper tribunal to try that question. It is a question which properly belongs to equity jurisdiction. The complainants having rightfully resorted to this court to enforce their lien, and to have the priorities of all parties claiming liens upon the property ascertained and settled, the injunction was clearly right. Without it, the mortgage would have been worthless. A decree of this

court would have amounted to nothing, if a sale by the auditors had been permitted. It was eminently proper that the court should protect the property for the benefit of all lien creditors. The questions which arise are questions belonging to equity, and all parties are rightfully brought here to settle them. Neither party should be permitted to enforce his lien until the rights of all parties are settled. It was for the preservation of the property that the injunction issued. The injunction, until the rights of all parties are ascertained, is for the benefit of all. The sale by the auditors, if it had taken place, would have been a mere matter of speculation. It would have been a sale of property worth some twenty or thirty thousand dollars, with an encumbrance upon it of forty thousand. What design could the creditors have had who complain of this injunction in pressing a sale, except to scatter this property in the hands of a hundred purchasers, or else to avail themselves of the opportunity of purchasing it, with its value depreciated with this alledged prior encumbrance upon it?

On behalf of the defendants, counsel insist that the injunction should be dissolved, if the affirmation of either of two propositions which they state is correct: *first,* if it appears on the face of the bill that, according to the condition of the mortgage, there has been no such default as entitles the mortgagee to enforce the payment of the money secured by the mortgage; and, *second,* if it appears on the face of the bill that there is no default, and that there never can be any such default as to entitle the mortgagee to enforce the mortgage. The last proposition is so evidently correct that it does not admit of argument. If circumstances have so changed between the parties since the execution of the mortgage, in reference to its subject matter, that there never can be any default, then the complainants can have no rights secured by it; and consequently a bill cannot be maintained upon it for any purpose. It has answered its object. It is satisfied—as

much so as if it had been a mere condition to pay a sum of money at a particular time, and the money had been paid.

But the first proposition is not correct. The condition of the mortgage may not have been broken; the time may not have arrived when the money is payable, and so that, as between the mortgagor and mortgagee, the latter may claim his money, and the right to enforce his mortgage for its payment; and yet there may be circumstances notwithstanding which will entitle the mortgagee to exhibit his bill upon the mortgage for the maintenance and protection of the mortgage property, and to justify the court in converting the mortgage property into money, for the better protection of all the parties in interest. The propriety and necessity of such a course may be illustrated by this very case. The complainants, under their contract with the defendant, Mallery, had in their hands forty-two thousand dollars, which was the value of work done for them by Mallery. They had a right, under the contract, to retain that money for their indemnity, and to enable them to secure the faithful fulfilment of the contract. They had the right, under certain stipulations, to declare the contract forfeited, and to retain the money as their damages under that forfeiture. They substituted, by agreement, the mortgage for that money. Now it is true (supposing, for illustration, this to be the only default that could occur), as between the parties to the mortgage, the complainant never could file a bill to enforce payment of the money until a forfeiture should occur. But in the mean time, is this mortgaged property to be carried off by those attaching creditors? Is the lien to be lost, and the mortgagees without remedy in the premises? Why should this be, when this court can afford to all parties ample protection? The mortgage is an honest one—its *bona fides* is not questioned. It is a substitute for the money which the company has paid to Mallery. The defendants raise no equity in their own favor

against the mortgage or its priority. They do not complain of the property's remaining in the hands of the mortgagor, and set up that, in consequence of it, they were induced upon the credit of the property to trust their debtor. Why, then, should these complainants lose their lien? They must lose it, if the mere fact of there being no default in the mortgagor prevents their filing their bill. If the property was in the possession of the mortgagees, no one will pretend that the attaching creditors could deprive them of that possession without first paying the encumbrance. And yet they would be entitled to the possession only to protect their lien. They could not sell it. It would remain in pledge for the complainants' indemnity, just as the money for which the mortgaged property was substituted would have remained if the substitute had never been made. The creditors might have attached that money in the complainants' hands, but it would have been subject to the lien which the complainants had upon it under the contract. And that is all the claim they have upon the mortgaged property. It is subject to the complainants' lien.

Under such circumstances it is that the complainants ask the protection of this court. It is these creditors who have driven them here. They are about impairing their lien. They come here for protection, and are entitled to it. But must the property remain in *statu quo* until the *future* shall reveal how much out of the forty-two thousand dollars the complainants are entitled to *recoupe* for any lawful demand they may have against the mortgagor? Would it not be right, upon the case assumed, for this court to order the property sold and converted into money? The attaching creditors say they have a right to a sale—and so they have; but the question is —how shall that right be exercised? They will sell subject to the mortgages, if this court does not interfere. There would be nothing to hinder this court's ordering the property sold clear of all encumbrances for the benefit of the creditors. Should it bring more than the

amount of the mortgage, such surplus would be paid at once to the attaching creditors, and the balance this court would protect until the complainants' rights were settled. If eventually the complainants should have no claim upon the money, then the attaching creditors would be entitled to all of it, or to so much of it as might be necessary to satisfy their demands.

I think the case I have supposed is a very clear one, where it would be eminently proper for the court to decree the sale of the property before any default had occurred in the proviso, or condition, of the mortgage. But these complainants have not filed their bill for the purpose of protecting the lien to answer any future contingency. They do not claim the right to have their lien preserved, and the property protected, to answer any future default in the contract between them and Mallery. The object of the bill is not to preserve the property for their future indemnity. They allege a default. They claim the absolute right to the forty-two thousand dollars on account of a *part* default. This is the aspect of their bill, and if it cannot be maintained in this aspect, it must be dismissed.

Has there been any such default as to entitle the complainants to this money? As I have before stated, the bill shows that the mortgage is nothing more than a substitute for the $42,000. The complainants are not entitled to the money until the condition of the mortgage is broken. When the complainants can claim the $42,000 as their own on account of some breach of the contract, and not merely the right to hold it as an indemnity, then they may enforce their mortgage, and not before. We must then resort to the contract, which is attached to and made part of the bill, for the purpose of ascertaining whether, according to its terms, the complainants are entitled to the money.

There are but three clauses in the contract which make any reference to the reserved ten per cent.

The first clause is as follows : " It is further agreed that payments shall be made from time to time, as the work progresses, on the certificate of the engineer for work done ; the said engineer to deduct such percentage as he may think proper from the value of the work done, which shall in no case be less than ten per cent."

There are two clauses which particularly specify the purposes to which this fund may be appropriated. One is the following : " If the party of the first part shall refuse or unreasonably neglect to remedy any imperfections which may be pointed out by the engineer, or in any manner violate the conditions of the contract, so that, in the judgment of the engineer, there shall be just grounds of apprehension that the work will not be completed in the manner and within the time herein specified, then it shall be the duty of the engineer to serve a written notice upon said party, setting forth the grounds of his apprehension, and specifying the manner, together with a reasonable time, in which said party may cause such grounds to be removed; and if, at the expiration of such time, said grounds of apprehension be not removed, then full power and authority are mutually vested in such engineer to declare this contract forfeited ; and on such declaration being given in writing to the parties hereto, this contract shall cease and determine immediately, and the said party of the second part may for ever retain the reserved percentage . on account of . the consideration for damages which they may have sustained by reason of the forfeiture of this contract."

Whether if, under the clause just recited, the engineer had declared the contract forfeited, the company could claim the ten per cent., then in their hands, as liquidated damages or an absolute forfeiture, or could only remunerate themselves out of it for the actual damages sustained by them, it is not necessary. for the purpose of this cause to determine. The stipulation for the retention of the percentage is very different from that in the contract of

the parties in the *Philadelphia, Wilmington, and Baltimore Railroad* v. *Howard*, 13 *Howard's Rep.* 342. The contract between the parties in that case expressly declared that the percentage was retained "*to indemnify and protect the party of the second part from loss in case of default and forfeiture*" of the contract. In the opinion of the court, it is said, "there is a wide difference, both in fact and in law, between indemnity and forfeiture; yet it is the former, and not the latter, which the parties had in view. Whether the express stipulation for a forfeiture of this fifteen per cent. could have been enforced, it is not necessary to decide." I am inclined to think, however, that the parties in this case had forfeiture in view, not only from the language and phraseology of the clause recited, but from another consideration. They immediately provide in the contract for two *alternatives* to the declaration of forfeiture, in one of which this fund is to be appropriated for the indemnity of the company. It is as follows: "Or, as another alternative, the party of the second part, at their option, may allow the party of the first part an extension of time; in which case the party of the first part hereby agrees to forfeit to the party of the second part the sum of two thousand five hundred dollars for each and every month the work shall be delayed beyond the time herein stipulated for the completion of the same, the amount to be deducted from the engineer's estimates or from the reserved per centage." But I do not consider the effect of the declaration of forfeiture upon the disposition of this fund material to a right decision of the case now presented for the consideration of the court.

I have recited all such portions of the contract as have any reference to the retention of the ten per cent. by the company. I think it is clear that the company have no claim upon it, except for the purposes particularly mentioned in the two clauses of the contract. After the provision for the creation of the fund, the contract then provides for its appropriation. It is not a fund for the gene-

ral indemnity of the company against a breach of the contract. Its special appropriation, in particular cases, is an exclusion of the right to appropriate it for any other purpose. The parties have not seen proper to leave it as a general indemnity for the benefit of the company, but have fixed the terms upon which the company may resort to it for indemnity. It must be appropriated for the purposes and in the manner the contract provides, and in no other way.

The simple questions then are—has the engineer declared the contract forfeited? If he has, then the contract provides that in such case the company may retain the reserved ten per cent. "on account of the consideration for damages which they may have sustained by reason of the forfeiture." Has the company allowed to the other contracting party an extension of time? In that case the company are entitled to deduct from the fund "twenty-five hundred dollars for each and every month the work shall be delayed beyond the time stipulated for the completion of the same." There are no other provisions of the contract under which the company have any claim upon the fund. The complainants must bring themselves within these provisions, or they cannot maintain this bill. They do not. There are no allegations in the bill to that effect; and their bill, in connection with the affidavits used on the motion, shows that their engineer has not declared the contract forfeited, and that they have not given the extension according to the terms of the contract.

As the complainants cannot maintain their bill, the injunction must fall of course.

The application for receiver and sale is denied with costs, and the motion to dissolve the injunction is sustained with costs.